<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL FOWLER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SECTIGO, INC.,<br><br>　　　　Defendant. | Civil Action No. 24-00936 (JKS)(SDA)<br><br>**OPINION**<br><br>August 14, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Sectigo Inc.'s ("Sectigo" or "Defendant") motion to dismiss Count II of Plaintiff Michael Fowler's ("Fowler" or "Plaintiff") Complaint pursuant to Rule 12(b)(6). (ECF 10.) The Court reviewed all submissions in support and in opposition and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **GRANTED**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Sectigo is a corporation formed under the laws of Delaware with a principal place of business in Roseland, New Jersey. (ECF 1-1, Compl. ¶ 7.) The corporation "and its predecessors are and have been in the business of providing identity and trust assurance services on the internet."

---

[1] The allegations in the Complaint must be accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the Complaint and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Plaintiff's Complaint explicitly relies upon the Separation Agreement to set forth his claims. As such, the Court relies upon the Complaint ("Compl.") and Separation Agreement with Defendant.

(*Id.*) Fowler is an individual residing in the Borough of Roseland in Essex County, New Jersey. (*Id.* ¶ 6.) Sectigo employed Fowler for over twenty years until his separation with the company in August 2023 (*Id.* ¶¶ 2, 8.) Prior to the separation, Fowler held the position of President of Partners and Channels, managing approximately 50% of the company's revenue. (*Id.* ¶ 8.)

On August 7, 2023, Sectigo notified Plaintiff of his termination. (*Id.* ¶ 9.) In connection with Plaintiff's termination, the parties negotiated a Separation Agreement (the "Agreement"), which Plaintiff signed on August 25, 2023. (*Id.* ¶ 13; ECF 10-3, Exhibit 1 at 1.) The Agreement incorporated a preexisting confidentiality agreement dating back to February 1, 2019, which contained a nationwide non-compete provision for one year. (ECF 1-1, Compl. ¶ 54.) It also was set to provide the Plaintiff a Separation Payment ("Severance") totaling $187,500.00, paid out in eighteen semi-monthly payments. (*Id.* ¶ 13.)

To date, Plaintiff has not received any portion of the Separation Payment. (*Id.* ¶ 3.) After Sectigo failed to pay the first installment of the Separation Payment due on September 8, 2023, Plaintiff inquired five days later on September 13 as to its status because he believed the non-payment was the result of an administrative payroll issue. (*Id.* ¶¶ 14-15.) On September 15, Julie Gettys ("Gettys"), Sectigo's Chief Human Resources Officer, notified Plaintiff via e-mail that Sectigo was awaiting the ability to access his last computer. (*Id.* ¶ 16.) On November 3, Gettys notified Plaintiff that the severance package was under review because the company property on his laptop that was required to be returned was deleted from the computer. (*Id.* ¶ 17.) On November 7, Gettys notified Plaintiff that he breached the Agreement and could not receive the Severance because he failed to return company documents and property, and when he returned his company-issued laptop to Defendant, it was reset to factory settings, or "wiped clean." (*Id.* ¶¶ 3, 18; *see* ECF 10-3, Exhibit 1 at 4.) Plaintiff attests that all documents are available to Defendant on its servers

and the "wiping" of the laptop constitutes "a mere technical breach of the Agreement." (ECF 1-1, Compl. ¶¶ 22, 24.) Plaintiff and Sectigo met to sign an additional declaration as a condition to the payment of the Separation Payment, which would require the former to attest that "(a) he was not in possession of any of Sectigo's proprietary or confidential information (the "Sectigo Information"), (b) he did not and will not use any Sectigo Information after his termination, (c) he would continue to honor his post-employment obligations, and (d) he would let Sectigo know where it could find its own confidential information." *Id.* ¶ 28.) The draft certification purportedly included "draconian terms" potentially triggering the payment of Sectigo's attorneys' fees, the option for Sectigo to repurchase Plaintiff's equity units at a substantial market value discount, and a caveat indicating the Separation Payment would be paid out over a year, rather than nine months. (*Id*. ¶¶ 30-31.) Plaintiff rejected this certification and filed the instant suit to enforce his rights. (*Id*. ¶¶ 31-33.)

Plaintiff initially filed his Complaint in the Superior Court of New Jersey, Law Division, Essex County on January 22, 2024. (*See* Compl.) Defendant timely removed the case to the District Court pursuant to 28 U.S.C. §§ 1441(a) and 1446. (ECF 1.) The Complaint asserts four counts: (I) Breach of the Agreement, (II) Violation of the Wage Payment Law ("WPL"), (III) Conversion, and (IV) Declaratory Judgment. (ECF 1-1, Compl.) On Count II,[2] Plaintiff alleges Defendant owes Plaintiff $375,000.00 in liquidated damages, plus interest, costs, and attorneys' fees, in addition to the $187,500.00 sought on Count One. (*Id*. at 12.)

## II.    LEGAL STANDARD

---

[2] Defendant filed the instant motion to dismiss Count Two of the Complaint on February 27, 2024. (ECF 10, "Def. MTD.")  Plaintiff opposed Defendant's motion. (ECF 18, "Pl. Opp.") Defendant filed a reply. (ECF 20, "Def. Rep.")

3

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 LEXIS 185621, at *2 (D.N.J. Jan. 23, 2015).

III.    ANALYSIS

    A. **WPL: N.J. Stat. Ann. § 34:11-4.2**

Count II of Plaintiff's Complaint is a Wage Payment Law ("WPL") claim for the alleged failure of Defendant to pay Plaintiff wages pursuant to N.J. Stat. Ann. § 34:11-4.10(c). (ECF 1-1,

Compl. ¶ 42.) Unless an exception applies, the WPL requires that "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month." N.J. Stat. Ann. § 34:11-4.2. Accordingly, the failure of an employer to pay the full amount of agreed-to wages to an employee may allow the latter to recover the full amount of wages due plus liquidated damages "not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court." N.J. Stat. Ann. § 34:11-4.10(c).

The WPL defines wages as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1(c). Sectigo argues that the Separation Payment, in the form of severance, is not "wages" as defined under the plain meaning of the statute. (ECF 10-1, Def. Br. at 5.)

The New Jersey Supreme Court has yet to interpret whether the statute would include such payment under its formal definition of wages. Accordingly, this Court is tasked with evaluating how the New Jersey Supreme Court would ultimately rule on this question of statutory interpretation and law. *Bernard v. Cosby*, 648 F. Supp. 3d 558, 565 (D.N.J. 2023) (citing *Roma v. U.S.*, 344 F.3d 352, 361 (3d Cir. 2003)).[3] The plain language of the statute indeed provides

---

[3] Defendant contends the New Jersey Supreme Court has not previously interpreted this issue. (ECF 10, Def. MTD at 6.) Plaintiff agrees there is no decisive authority from New Jersey courts on this issue. (ECF 18, Pl. Opp. at 2.) However, Plaintiff's citation to *United States v. Quality Stores, Inc.,* is misguided. *Quality Stores* is an interpretation of the Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et seq*. and whether severance payments are taxable wages under that statute, which includes a broader definition of wages: "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." *United States v. Quality Stores, Inc.,* 572 U.S. 141, 146 (2014) (quoting 26 U.S.C. § 3121(a)). Plaintiff's citation to *Kilian v. International Society of Interdisciplinary Engineers LLC* is similarly misplaced. In that case, the court found that the severance at issue constituted wages under the NJWPL because they were wages for services considered rendered by the execution of an employment agreement. *Kilian v. International Society of Interdisciplinary Engineers LLC*, No. N22C-05-111, 2023 Del. Super. LEXIS 22, at *22-23 (Del. Super. Ct. Jan. 18, 2023). Similar to *Owens v. Press Publishing Co.*, 120 A.2d 442, 446 (N.J. 1956), discussed *infra*, the severance in *Kilian* was part of an initially negotiated compensation package as part of the plaintiff's five-year employment contract. *Kilian*, 2023 Del. Super. LEXIS 22, at *3-5. This is not the case in the instant matter, because Plaintiff was not governed by an employment contract at the outset of

instructive language as to how to interpret the statute. Additionally, federal courts' interpretation of the state law, state intermediate appellate decisions, and other persuasive material guide the Court. *Id*. at 565-66 (citing *Spence v. ESAB Grp., Inc.*, 623 F. 3d 212, 216-17 (3d Cir. 2010)); *see also Fink v. Ritner*, 318 F. Supp. 2d 225, 228 (D.N.J. 2004) ("A court will consider the New Jersey legislature's purpose for enacting such a statute, as well as how the New Jersey courts have interpreted and applied the statute.").[4]

Plaintiff proffers two arguments. First, Plaintiff contends that the Severance Payments are properly considered wages under the WPL. (ECF 18, Pl. Opp. at 7.) Second, in the alternative, Plaintiff contends that his adherence to the non-compete obligation set forth in the Separation Agreement is a "service" for purposes of the WPL, one for which the Plaintiff has not been paid, and that the Separation Payments are the primary consideration for the non-compete. (*Id*. at 12-13.)

### B. Severance under the WPL

The WPL's statutory language in N.J. Stat. Ann. § 34:11-4.2 "clearly indicates that 'wages' are payments promised in advance of the services performed and paid promptly, or at least intended to be paid promptly, after services are rendered. Retroactive payments do not fit into this statutory scheme and are not addressed by this statute." *Finkler v. Elsinore Shore Associates*, 725 F. Supp. 828, 832 (D.N.J. 1989); *see e.g. Moran v. DaVita, Inc.*, No. 06-CV-5620, 2009 LEXIS 22951, at *56 (D.N.J. Mar. 23, 2009) (holding that Plaintiff could not recover under the WPL because "she

---

employment that contained the Separation Payment. (ECF 20, Def. Rep. at 4-5.). Additionally, the *Killian* court noted that it "may revisit whether 'severance' constitutes wages under the NJWPL. [It] is not comfortable that the legal analysis on this issue has been completely/exhaustively analyzed under New Jersey law." *Kilian*, 2023 Del. Super LEXIS 22*, at *23.

[4] "Although the WPL does not have a legislative statement of intent, its enactment leads to the conclusion that the statute was designed to protect employees' wages and to guarantee receipt of the fruits of their labor." *Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 83 (D.N.J. 2022) (quoting *Rosen v. Smith Barney, Inc.*, 925 A.2d 32, 37 (N.J. Super. Ct. App. Div. 2007), *aff'd*, 950 A.2d 205 (N.J. 2008).

was no longer rendering services" for Defendant) (appealed and remanded on other grounds); *Hatcher v. Family Dollar* Store, No. 08-CV-1444, 2010 LEXIS 29211, at *41 (D.N.J. Mar. 26, 2010) (holding that Plaintiff could recover lost wages under the WPL for services rendered by Plaintiff *after* Defendant promised to increase her hourly wage but failed to do so) (emphasis added). As a result, "wages" as defined under the WPL were not intended to include payments owed pursuant to a contractual agreement but not attached to the performance of services. *Moran*, 2009 LEXIS 22951, at *56. Furthermore, wages "exclude of any form of supplementary incentives and bonuses" which predisposes the exclusion of severance. N.J. Stat. Ann. § 34:11-4.1 (c); *see e.g. Dubler v. Hangsterfer's Labs.*, No. 09-5144, 2012 LEXIS 283863, at *18 (D.N.J Mar. 5, 2012) (granting summary judgment to the defendant on a WPL claim for a year-end bonus payment and severance benefits "based on the definition of 'wages' in the WPL" after the plaintiff offered no argument to rebut defendant's claim). The definition of wages indicates that "a plaintiff may only recover compensation for services or labor already provided by the plaintiff—not for future unearned compensation." *Pickholz v. Transparentbusiness, Inc.*, No. 22-2504, 2024 LEXIS 22159, at *32 (D.N.J. Feb. 8, 2024); *see also Soranno v. Heartland Payment Sys., LLC*, No. 18-16218, 2020 LEXIS 174905, at *33 (D.N.J. Sept. 23, 2020) ("The plain language of the statute makes clear that the WPL is meant to protect only those wages which an employee earned *before* the termination of his employment.").

The Separation Payment is not "wages" as defined under N.J. Stat. Ann. § 34:11-4.1(c) and 4.2. Plaintiff entered into a Separation and Release Agreement in August of 2023 in connection with his separation of employment from Sectigo that would provide Plaintiff a total of $187,500.00 via direct deposit in eighteen semi-monthly payroll installments. (ECF 1-1, Compl. ¶ 2.) Plaintiff did not initially negotiate this severance pay as part of his employment contract. (ECF 20, Def.

7

Rep. at 3.) The severance payments are offered in connection with his termination and not "in advance of the services performed and paid promptly, or at least intended to be paid promptly, after services are rendered." *Finkler*, 725 F. Supp. at 832. Nor are the severance payments direct monetary compensation "determined on a time, task, piece, or commission basis" for services rendered. N.J. Stat. Ann. § 34:11-4.1(c). Ultimately, the Separation Payment was promised after Plaintiff would cease performing services for Defendant. (ECF 10-1, Def. MTD. at 9.) He understood that he would not receive the severance if he did not execute the Separation and Release Agreement and fulfill its obligations, including the return of Defendant's property and documents. (ECF 10-3, Exhibit 1 ¶¶ 2(a), 6.) Defendant delivered the Separation and Release Agreement, along with its Separation Payment, to Plaintiff on August 7, which is when his termination became effective. (*Id.* ¶¶ 1, 11). Consequently, the payments could have never vested during his employment, nor could the Separation Agreement have been promised in advance of performed services.[5]

The WPL was "designed to protect employees' wages and to guarantee receipt of the fruits of their labor." *Portillo*, 606 F. Supp. 3d at 83 (quoting *Rosen v. Smith Barney, Inc.*, 925 A.2d 32, 37 (N.J. Super. Ct. App. Div. 2007), *aff'd*, 950 A.2d 205 (N.J. 2008)). Accordingly, the Separation Payments here are not compensation for labor or services performed before execution of the Separation Agreement.[6]

---

[5] Plaintiff's reliance on *Owens* is misguided. In *Owens v. Press Publishing Co.*, the New Jersey Supreme Court held that severance pay is "terminal compensation measured by the service given during the subsistence of the contract" and is thus "[i]n a real sense is remuneration for . . . services rendered." 120 A.2d 442, 446 (N.J. 1956). In that case, the question of a severance-pay provision concerned a collective bargaining agreement ("CBA"), the purpose of which was for parties to understand the terms of their labor and included severance to alleviate economic readjustment. *Id*. Once again, this is markedly different from the instant matter, where Plaintiff was not governed by a CBA or employment contract at the outset of employment that contained the Separation Payment. (ECF 20, Def. Rep. at 4-5.)

[6] "The court noted that the term wages, defined under § 31-222(b) as 'all remuneration for employment,' 'connotes all remuneration for any service performed in the course of an employer-employee relationship.' Thus, the court held that 'since, in connotation of the statute, wages cease when employment does, severance pay cannot be

8

### C. Noncompete As a "Service" Under the WPL

In the alternative, Plaintiff contends that the Separation Payment was "the purported consideration for a broad, nationwide non-compete provision." (ECF 1-1, Compl. ¶ 2.) In conforming to the non-compete, Plaintiff alleges he has performed a service as the term is used under the WPL's definition of "wages." (ECF 18, Pl. Opp. at 12-13.)

By Plaintiff's own account, the non-compete obligation as part of his Separation Agreement was in the Confidentiality Agreement entered into on February 1, 2019. (Compl. ¶ 54.) This would preclude a finding that the Separation Payment was the consideration for the 2019 non-compete. "Because past consideration is insufficient to support an agreement entered into subsequent to a primary contract, the subsequent agreement 'must be supported by new and independent consideration.'" *Perfume Paradise Ltd. v. Lekach*, No. 07-2750, 2008 LEXIS 133050, at *6 (D.N.J. Apr. 8, 2008) (quoting *Emerson N.Y.-N.J., Inc. v. Brookwood Television, Inc.*, 300 A.2d 187, 190 (N.J. Super. Ct. Law Div. 1973)).

Accordingly, the Separation Agreement itself states that the consideration for the severance payment was the Plaintiff's execution of the Separation Agreement. (ECF 10-3, Exhibit 1 ¶ 2(a).) Plaintiff understood and agreed that he would not receive the Separation Payment unless he fulfilled the obligations of the release. (*Id.* ¶ 2(c).) This included the return of all Sectigo property and documents. (*Id.* ¶ 6.) The severance payments would not be "direct monetary compensation for *labor or services* rendered by an *employee*." N.J. Stat. Ann. § 34:11-4.1(c) (emphasis added). They would be for an already-established agreement to not provide services or labor in the future

---

considered wages.'" *ABC Office Equipment, Inc. v. Royal Consumer Business Products, Div. of Triumph-Adler-Royal, Inc.*, 721 F. Supp. 1557, 1559 (D. Conn. 1989) (quoting *McGowan v. Administrator, Unemployment Compensation Act*, 220 A. 2d 284, 285 (Conn. 1966). In this District of Connecticut case, the court held that "severance allowance" was not within a Connecticut statute's similar definition of wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation" because the payments were not compensation for services or labor rendered by Plaintiff, but rather to remain with Defendant for an interim relocation period. *ABC Office Equipment, Inc.*, 721 F. Supp. at 1559-60.

9

to a competitor. Put simply, Defendant terminated Plaintiff's employment and, therefore, Defendant is no longer his "employer" while the non-compete is in effect. With Plaintiff's termination, Defendants discharged their obligations with respect to services rendered in the past. *See* N.J. Stat. Ann. § 34:11-4.1(a) ("'Employer' means any individual, partnership, association . . . employing any person in this State.); *see also* N.J. Stat. Ann. § 34:11-4.1(b) ("Employee" means any person suffered or permitted to work by an employer).

IV.   **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Count II of Plaintiff's Complaint is **GRANTED** and Count II of Plaintiff's Complaint is dismissed with prejudice.[7] An appropriate order accompanies this opinion.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:      Clerk
cc:        Stacey D. Adams, U.S.M.J.
           Parties

---

[7] The Separation Payments are not wages under the formal definition provided in the WPL, and the non-compete is not the purported consideration or performance of a "service" to receive such payments. Denial of leave to amend is warranted in cases of futility. *See Oxford House, Inc. v. Twp. of N. Bergen*, No. 21-19260, 2024 LEXIS 90791, at *21 (D.N.J. May 21, 2024) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (noting that a court need not provide leave to amend where such amendment would be "futile"). If the amended complaint would not survive a motion to dismiss for failure to state a claim, the amendment is futile. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014). Here, there is no method for Plaintiff to fashion or amend his Complaint to comply with WPL standards. He cannot convert the Separation Payment into wages for purposes of indicating a violation of the WPL in Count II because as a matter of law, the language of the WPL is inapposite to Count II of Plaintiff's Complaint.